

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

MAY 2 1 2004

ROBERT H. SHEMWELL, CLERK
BY _____
          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

SUE ANN EASTERLING                         CIVIL ACTION NO. 03-0985-A

VERSUS                                     JUDGE DRELL

CONCORDIA PARISH SCHOOL BOARD              MAGISTRATE JUDGE KIRK

### STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

NOW INTO COURT, through undersigned counsel, comes defendant, Concordia Parish School Board, who respectfully supplies the Court with a statement of facts which are not in dispute for purposes of Defendant's Motion for Summary Judgment filed contemporaneously herewith. The present matter involves two claims: (1) plaintiff's allegation that she was not appointed to the head coaching position for girls basketball at Vidalia High School in the Fall of 2001 due to gender discrimination and (2) that as a result of her complaints relative to not getting the appointment, she was the victim of retaliation. The material facts are separated as to each claim as follows:

#### Appointment Issue

1.

The Concordia Parish School Board is a political subdivision of the State of Louisiana responsible for the education of students in Concordia Parish and operates ten schools throughout the parish.

2.

The following central office administrative positions are held by female employees:

Superintendent                    Dr. Kerry Laster

| | |
|---|---|
| Resource Supervisor | Beatrice Williams |
| Special Education Supervisor | Mary Tarver |
| Educational Support Supervisor | Patty Bellis |
| Personnel Coordinator | Ann Sandidge |
| Technology Coordinator | Paula Paul |
| Technology Specialist | Beth Baldwin |
| Curriculum Specialist | Frances Lee |
| Business Affairs Office Manager | Gloria Dangerfield |

(Exhibits 3 and 5).

3.

There are ten schools in the system. The following principal positions are held by female employees:

| | |
|---|---|
| Ferriday Lower Elementary | Loretta Peterman |
| Ferriday Upper Elementary | Lillian Franklin |
| Ferriday Junior High School | Dorothy Parker |
| Ferriday High School | Debra Harris |
| Ridgecrest School (K-7) | Stephanie Blunschi |
| Vidalia Upper Elementary | Darla Johnston |
| Monterey School (K-12) | Neeva Sibley |

Only three schools have male principals. (Exhibits 3 and 5).

4.

In addition, there are six assistant principal positions held by female employees:

| | |
|---|---|
| Ferriday Lower Elementary | Sheila Allwood |
| Ferriday Upper Elementary | Dr. Brenda Moore |
| Ferriday High School | Michelle Bethea |
| Vidalia Lower Elementary | Doris Polk |
| Vidalia Upper Elementary | Phyllis Cage |
| Vidalia High School | Janna Lincucum |

(Exhibits 3 and 5).

5.

All three high schools in the parish have had a female head coach.  During the past five years

alone, the following coaching positions have been held by female employees:

| | |
|---|---|
| Lisa Abron | Head basketball at Ferriday High School |
| Jeannie Crocovic | Head softball at Ferriday High School |
| Hazel Brallier | Head basketball and head softball at Monterey High School |
| Ashley Avery | Head basketball at Monterey Junior High School |
| Lillian Johnson | Head basketball at Vidalia High School |
| Rebecca Stephenson | Head basketball and head softball at Ferriday Junior High |
| Brenda Logan | Head basketball at Vidalia Junior High |
| Vangie Cupit | Head Softball at Vidalia Junior High |
| Gail Duncan | Assistant basketball at Ferriday Junior High |
| Yvonne Chatman | Assistant Basketball at Ferriday High School |
| Latonya Blanton | Assistant Basketball at Ferriday High School |
| Stacey Allen | Assistant Softball at Vidalia Junior High |

(Exhibit 5).

6.

At all times relevant to the present matter, plaintiff, Sue Ann Easterling, was employed as

an adaptive physical education (APE) teacher with the Concordia Parish School Board (Easterling

depo. p. 22, line 12 - p. 23, line 4).  She is still employed in that capacity.

7.

In the Spring of 2001, Lillian Johnson, a teacher at Vidalia High School who had also been

assigned the head coaching duties of the Vidalia Girls Basketball team announced her retirement

after more than 25 years of service (Easterling depo. p. 52, lines 11-21; Brown depo p. 14, line 22 -

p. 15, line 4).

8.

With the announcement of Ms. Johnson's retirement, the principal was faced with the need

to assign the coaching duties to another employee (Brown depo. p. 16, lines 21-23).

9.

When the principal sought to fill the position, four people expressed an interest in the

appointment:

> Damus Smith (who was already on the Vidalia High teaching staff);
> Brenda Logan;
> Sue Ann Easterling; and
> Mr. Walker (first name unknown)

(Brown depo. p. 19, line 10 - p. 20, line 10).

10.

Of those persons listed in the preceding paragraph, Mr. Smith, Ms. Easterling and Ms. Logan

were interviewed for the position by the principal.   Mr. Walker, a Mississippi resident, did not

contact the principal again after making an initial telephone inquiry (Brown depo. p. 20, lines 6-8;

p. 21, line 23 - p. 22, line 3; Easterling depo. p. 56, lines 11-19).

11.

At the time Ms. Easterling expressed an interest in the position, her basketball coaching

experience included ten years of Special Olympics basketball and two years coaching girls basketball

(ages 11-13) in the local youth league.  Special Olympics basketball games are typically held on two

or three days *per year* (Easterling depo. p. 27, line 3 - p. 34, line 5).

-4-

12.

At the time Ms. Logan expressed interest in the position, her basketball coaching experience

included having served as head coach at the junior high level in Catahoula Parish for approximately

two years, and as an assistant and head coach in the Concordia system for approximately eight years.

Her experience in Concordia Parish was at Ferriday Junior High School and Vidalia Junior High.

Ms. Logan is still employed as a teacher and as head girls basketball coach at Vidalia Junior High

School.  (Logan deposition, pp 9-13).

13.

At the time he expressed an interest in the position, Damus Smith was already on the Vidalia

High School teaching and coaching staff and his experience included:

| | |
|---|---|
| Vidalia High School Boys Basketball Assistant Coach | 1999-2001 |
| Vidalia High School Boys Basketball Volunteer Coach | 1978-1998 |
| Vidalia High School Girls Basketball Volunteer Coach | 1978-1998 |
| DeWayne Albert Summer League (Boys and Girls) | 1995-2000 |
| Northwestern State University Team Camp (VHS Boys) | 1994-2001 |
| Mississippi State University Team Camp (VHS Boys) | 1994-2001 |
| Southern University Youth Summer League | 1976-1982 |

As part of his duties in the above-described positions, Mr. Smith had attended both practices and

games.  He had been directly involved with running practice and with coaching strategy during 25-

30 games per season per team (Sanders depo. p. 14, lines 7-10; p. 49, lines 3-17; Smith depo. p. 28,

line 15 - p. 35, line 20; Exhibit 20).

14.

Ultimately, Damus Smith was assigned the head coaching position.

15.

Ms. Easterling filed a grievance with the school board relative to the appointment of Mr. Smith. This grievance proceeded through all administrative levels and was ultimately denied by the school board as well. It was felt that Damus Smith had more experience than Ms. Easterling (Brown depo. p. 37, lines 21-23; Easterling depo. p. 154, lines 3-5).

16.

Thereafter, Ms. Easterling filed a claim of gender discrimination with the EEOC (Easterling depo. p. 74, line 9 - p. 75, line 3).

17.

The EEOC determined that there was cause to believe that discrimination had occurred based solely upon the fact that Damus Smith was not a certified teacher. Specifically, the EEOC wrote:

"Examination of the evidence establishes that two females and a male teacher requested to fill the position of girls head basketball coach at Vidalia High School. **Respondents stated they selected the most experienced and qualified person.** (Emphasis Supplied)

Records show the male teacher has a B.S. in business management and he has coaching experience. The male was employed as a business teacher in September of 2000. Prior to 2000 he was a vocational teacher's aide/assistant coach. **He has a temporary teaching certification which allows him to teach until he becomes fully certified.** Charging party has a B.S. Degree in physical education, a minor in secondary education, has coaching experience and is a certified teacher. (Emphasis Supplied)

According to Bulletin 746–Louisiana Standards for State Certification of School Personnel, 'No person who lacks this certificate shall be legally eligible for teaching, administrative, supervisory or other professional services in the public schools of this state.' State policies regarding the employment of school personnel are designed to first reach those who are certified. Respondent was required to present an affidavit stating that the position could not be filled by a certified teacher. Charging party is certified and qualified for the head coach position." (Exhibit 15)

-6-

Contrary to the EEOC's understanding of the law, both the Louisiana State Department of Education and the Louisiana High School Athletic Association have provided affidavits attached hereto clearly indicating that teacher certification is not required for one to coach (Exhibits 1 and 2). Simply stated, there is no certification requirement for one to serve as a coach, and decisions regarding coaching assignments can be based upon factors such as coaching experience and the employee's current school assignment.

18.

Significantly, other head coaching positions had been filled with female employees based upon experience. Lisa Abron, the head basketball coach at Ferriday High School, was not certified at the time she was assigned the head coaching duties at that school (Butcher depo., p. 49, line 25; p. 50, lines 1-4).

19.

Ms. Easterling initiated suit in proper person after having received her right to sue letter.

**Retaliation Issue**

20.

At all times material to the present action, Sue Ann Easterling was employed by the Concordia Parish School Board as an adaptive physical education teacher (APE) under the ambit of the Concordia Parish Special Education Department (Easterling depo. p. 22, line 12 - p. 23, line 4). Teachers certified in APE are not readily available, and Ms. Easterling remains employed by Defendant in that capacity today (Easterling depo. p. 68, lines 2-15; Butcher depo. p. 82, lines 20-24).

21.

At no time material to the present matter has Ms. Easterling's pay been reduced (Exhibit 3).

-7-

22.

At no time material to the present matter has Ms. Easterling received less than a satisfactory evaluation (Exhibit 3).

23.

Throughout her employment, Ms. Easterling has not been assigned to a particular school site, as are traditional teachers. Rather, Ms. Easterling has served and continues to serve students with special needs in two locations: Ferriday and Monterey (Easterling depo. p. 104, lines 2-15).

24.

Until the Fall of 2001, the Concordia Parish School Board's Special Education Department was housed in Ferriday, Louisiana. However, at that time additional office space became available in Vidalia, the parish seat where the central office is located. As a result, the Special Education Department was relocated to that available space. Notwithstanding this move, Ms. Easterling's students remain in Ferriday and Monterey (Tarver depo. p. 29, line 18 - p. 30, line 3; p. 32, line 5 - p. 33, line 7) (Easterling dep. p. 104, line 16 – p. 105, line 2).

25.

In addition to instructing students in Ferriday, Ms. Easterling's planning period, the time set aside for teachers to plan their daily activities and lessons, was from 8 a.m. to 9 a.m. each day (Easterling depo. p. 157, line 21 - p. 158, line 19).

26.

Her first student of the day was to be seen in Ferriday at the conclusion of her planning period, at approximately 9 a.m (Tarver depo. p. 34, lines 18-22).

27.

As a result, Ms. Easterling was asked to continue to report to Ferriday for her planning period at 8 a.m. each day rather than have her planning period shortened by 15 to 25 minutes each day, the required time to travel from Ferriday to Vidalia (Peterman depo. p. 51, line 2-8; p. 16, line 18 - p. 19, line 1; Tarver depo. p. 34, line 18 – p. 35, line 3; Bell depo. p. 26, line 24 - p. 27, line 1).

28.

Notwithstanding the above, Ms. Easterling contends that requiring her to continue to report in Ferriday was retaliation (Easterling depo. p. 104, lines 2-15; p. 107, lines 5-14).

29.

The Concordia Parish School Board is legally responsible for maintaining reasonable supervision of those students assigned to its care before, during and after school while they are on campus. This supervision is accomplished by having teachers assume duty posts at various locations around campus. Teachers take turns doing this so that no one teacher is overly burdened. In the Fall of 2001, the need for an additional person to supervise students developed as a result of the reassignment of another teacher. Accordingly, the school principal assigned morning duty on one morning each week to Ms. Easterling. Every teacher, including the principal, has a duty assignment (Peterman depo. p. 29, line 8-10; Easterling depo. p. 100, line 19 - p. 102, line 8; p. 103, line 9-20; p. 108, lines 4-14).

30.

Roberts Sanders, defendant's other APE teacher, has performed duty at all schools to which he has ever been assigned and continues to do so today (Sanders depo. p. 31, line 11 - p. 32, line 17; Easterling depo. p. 108, lines 15-20).

31.

Notwithstanding the above, Ms. Easterling contends that the principal's request that she perform duty one morning a week as all other teachers do constitutes retaliation (Easterling depo. p. 108, lines 7-17).

32.

With the introduction of the concept of inclusion, Concordia Parish superintendents have limited the amount of time which special population students spend outside of the classroom during instruction periods. Previously, special education students' standardized test scores were not averaged into those of the regular student population for purposes of determining a school's overall test score. Currently, all students', both special and regular, scores are included into the average.   Special population students are merely afforded accommodations such as additional testing time.  As a result of the above-described changes, the superintendent directed principals and supervisors to maximize instruction time.  Accordingly, many activities such as band practice or competition, Special Olympic practice and other activities are no longer freely scheduled *during* school hours but are more limited (Exhibit 3).

33.

Notwithstanding the above, Ms. Easterling contends that any change in her ability to remove students from class for Special Olympics practice is retaliation (Easterling depo. p. 111, lines 10-19).

34.

The Concordia Parish School Board became aware of a Louisiana Attorney General opinion addressing certain provisions of federal legislation governing the transportation of school students. This opinion drastically altered the manner in which students were transported to extra-curricular and

-10-

other school functions.  The opinion concluded that students could only be transported in vehicles meeting the definition of a "school bus."  Certain vans previously used to transport students were no longer allowable (Tarver depo. p. 40, line 11 - p. 42, line 6).  Accordingly, scheduling issues became more important.

35.

Notwithstanding the above, Ms. Easterling contends that the scheduling changes and the resulting limitation on the availability of school buses at her disposal constitutes retaliation (Easterling depo. p. 194, line 21 – p. 196, line 4).

36.

Defendant tried to schedule CPR train ing courses for employees whose job required familiarity with CPR techniques.  Plaintiff had requested such training but her name did not appear on the initial list since two separate employees were trying to schedule the training.  Only one was successful and did not have complete information as to which employees were to attend.  Ms. Easterling's name was added, and she did participate.  Nonetheless, she attributes the above-described scheduling difficulties to retaliation (Exhibit 4).

37.

In December 2002, the Special Education Department attended a Christmas Party at the School Board Central Office.  Special Education employees were notified of the party by a copy of a notice being placed in each employee's box by a secretary.  Plaintiff contends that her box did not contain such an announcement.  Student workers were asked to place a notice in each box.  Plaintiff contends that her failure to find a notice in her box evidences retaliation (Exhibit 4).

-11-

38.

Plaintiff has written Defendant's principals, supervisors and its last three superintendents in excess of 25 letters or memorandums regarding the above issues. She disagrees with virtually all responses she has received from them and maintains that many responses evidence retaliation (Exhibit 18).

39.

As recently as December of 2003, the current superintendent of schools, Dr. Kerry Laster, held a conference with Ms. Easterling regarding various complaints, including several of those discussed hereinabove. At that time, the parties had a detailed discussion and agreed to a resolution of certain items. Nonetheless, Ms. Easterling persists in challenging these issues, even after the date of said conference and her apparent agreement to their resolution at that time (Exhibit 19; Easterling depo. p. 164, lines 5-21).

40.

In short, Plaintiff contends that *any* change which, in her opinion, in any way inconveniences her or makes her job "harder" than it was before her suit was filed must necessarily constitute retaliation (Easterling deposition, pp. 13-25, p. 197 and p. 198, lines 1-11).

Respectfully submitted,

HAMMONDS & SILLS
1103 Royal Avenue
Monroe, LA 71201
(318) 324-0101

By: _____
      Jon K. Guice, Bar No. 20841
      Michael Blake Kramer, Bar No. 28645

-12-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been forwarded to Laurie W. Lyons, Walker, Tooke & Lyons, 1700 Irving Place, Shreveport, Louisiana 71101, counsel of record for plaintiff herein, by placing a copy of same in the United States mail, postage prepaid, this ___ day of May, 2004.

Jon K. Guice



Robert L. Hammonds
Kenneth F. Sills
Harold J. Adkins
Jon K. Guice
Karen D. Murphy
Tina Dennis Darensbourg
Sanettria R. Glasper
Michael Blake Kramer

**HAMMONDS & SILLS**
ATTORNEYS AT LAW

1103 Royal Avenue
Monroe, LA 71201
PH 318-324-0101
FX 318-324-0809
800-960-5297

E-mail: jguice@hamsil.com

RECEIVED
IN MONROE, LA

MAY 2 1 2004

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

May 21, 2004

Ms. Angene Carroll
Deputy Clerk of Court
United States District Court
215 Federal Building
201 Jackson Street
Monroe, LA 71201

      Re:    Sue Ann Easterling v.
               Concordia Parish School Board
               Civil Action No. 03-0985-A
               Our File No. OPB-1618-02

Dear Ms. Carroll:

    Enclosed are Motion for Summary Judgment, Memorandum of Authorities in Support of Motion for Summary Judgment and Statement of Material Facts Not in Dispute for filing in the captioned matter.  Please return a stamped copy of each.

    We appreciate your assistance.

    With kindest regards, I remain

                         Very truly yours,

                         Jon K. Guice

JKG/bd

Enclosure

cc:  Hon. James Kirk
     Concordia Parish School Board