UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SUE ANN EASTERLING | CIVIL ACTION NO. 03-0985-A |
| -vs- | JUDGE DRELL |
| CONCORDIA PARISH SCHOOL BOARD | MAGISTRATE JUDGE KIRK |

RULING

Before the Court is defendant Concordia Parish School Board's motion for summary judgment (Doc. 23) and supplemental motion for summary judgment (Doc. 41). Having reviewed the motions and memoranda submitted by the parties, and the applicable statutes and case law, the motion for summary judgment will be granted in part, and denied in part. Defendant's supplemental motion for summary judgment will be granted.

FACTUAL BACKGROUND

Plaintiff, Sue Ann Easterling ("plaintiff"), is a teacher formerly employed by defendant at Vidalia High School in Vidalia, La., with a B.S. Degree in Physical Education, a minor in secondary education, and certification to teach physical education and adaptive physical education (Doc. 37). She has extensive experience coaching basketball teams in the Special Olympics and has coached

various other sports, such as track and field, volleyball, gymnastics and softball, for over twenty years. Much of her experience has been with behaviorally troubled students. In February 2001, Easterling applied for the position of head coach of the high school girls' basketball team. She did not get the position, which was given to Damus Smith ("Smith"), a male who worked at the high school as a vocational aide. Smith has experience coaching girls at the high school level and had coached in the Concordia Parish school system for at least 15 years (Doc. 23, Ex. 8). At the time of his application and acceptance he possessed a temporary teaching certificate.

Subsequently, plaintiff objected that she had been denied the position as a result of her gender. She filed a formal charge with the Equal Employment Opportunity Commission, whose conciliatory efforts were unsuccessful, and she received a "right to sue" letter on March 8, 2003. On July 21, 2003, plaintiff added retaliation charges to her complaints, and received a "right to sue" letter regarding these charges on March 16, 2004. Plaintiff subsequently initiated the instant action. Her suit claims discrimination in violation of Title VII, 42 U.S.C. § 1981(a), the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and state law. She also claims that the defendant has retaliated against her for filing her claim, in the following particulars: she has been excluded from school-oriented social activities, she was given two working offices ten miles apart, (one an inferior office with an unpleasant odor), she was

made to work outside for the first time in her employ with the defendant, her teams have suffered in their ability to compete and win following the removal of certain children from the teams, her privilege of writing directive memos was removed, she was not allowed to have weekly practices on a Friday, she was not allowed to do community outings with students on a routine basis, she was not allowed access to files and records during preparation period, and she was not allowed to report to other locations when needed. Plaintiff also complains about attending a meeting in Alexandria only to find that it had been cancelled without her knowledge. Finally, plaintiff alleges that she was denied a promotion/transfer to a higher paying behavioral interventionist position, in lieu of two other applicants who lacked required teacher certification but held master's degrees. Plaintiff resigned her employment in May 2004, for which she claims constructive discharge (Doc. 36).

The School Board now moves for summary judgment, arguing that Smith was qualified to be the head basketball coach and that it chose him on the basis of his qualifications, not his gender. The Board observes that the law grants employers the right to choose between two qualified candidates for one position, and that Easterling thus has no grounds for accusing it of discrimination. Defendant also discounts plaintiff's allegations of retaliation, claiming that none of the acts alleged to have been motivated by retaliation constitutes the type required for a cognizable retaliation claim. Finally, defendant seeks dismissal of

3

plaintiff's constructive discharge claim, arguing that the environment in which she worked in was not so oppressive as to make her resignation a fitting response.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if, after adequate time for discovery and upon motion, the nonmovant has failed to make a showing sufficient to establish an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The nonmovant must respond by offering actual evidence, not mere arguments or allegations. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002). She must go beyond the pleadings and, by her own affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

DISCUSSION

A.  Plaintiff's Sex Discrimination Claim

In Title VII cases, in the summary judgment stage, the initial burden is on the plaintiff to create a presumption of discrimination by making out a *prima facie* case of discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). To make out a *prima facie* case, the plaintiff must prove that (1) she belongs to a protected group, (2) she was qualified for the position which she sought, (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class.  *Id.*

If the plaintiff succeeds in making her *prima facie* case, a presumption of discrimination is created and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the action.  *Id.*  Doing so will cause the burden to shift back to the plaintiff, who must then prove by a preponderance of the evidence that the employer in fact intentionally discriminated against her because of her protected status. *Id.*  The plaintiff may do this by showing that the employer's proffered legitimate, nondiscriminatory reason was false and pretextual.  *Reeves v. Sanderson Plumbing Products*, 530 U.S.133, 147 (2000).  The plaintiff may prove this through either direct or indirect evidence to prove that her gender was A motivating factor.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003).  Although absence of proper motive is not always in itself sufficient evidence from which to infer discrimination, it may be seen as such by the trier

of fact, because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation". *Reeves*, 530 U.S. at 147-48.

Plaintiff offers ample evidence in her opposition (Doc. 37) that she was qualified for the head coaching position. She held a B.S. in Physical Education, a minor in Science and Secondary Education, and had eleven years of experience as a head coach. She played basketball as a junior high and high school student, and started a woman's league afterwards. She also had commercial driver's licenses which allowed her to transport students to and from games. The other elements of her *prima facie* case are also satisfied. She belongs to a protected group (women as a category, apart from the opposite sex), she suffered an adverse employment action, and she was passed over in favor of one who was not a member of the protected group. The defendant thus bears the burden of producing evidence showing there were legitimate, nondiscriminatory reasons for its selection of Smith. Defendant has done so. It is true that while the Concordia Parish School Board listed teacher certification as a requirement for the head coaching position, Smith held a temporary certificate at the time of hire (Doc. 37). He also held a business degree, as opposed to plaintiff's degree in physical education. Smith likewise had previous experience as an assistant coach at the high school level, and other experience dealing with athletes in a regular high school curriculum (Doc. 23). Plaintiff had experience coaching 11to

13 year olds, as well as Special Olympics teams. Neither candidate had prior experience coaching girls at the high school level. As Robert Sanders, another teacher employed by the defendant, stated in his deposition, Smith had more experience coaching "regular kids" on high school teams than he did (Sanders Depo. p. 50, Doc. 23, Exh. 7). Accordingly, the Court finds that Smith was also qualified for the position.

Under these circumstances, plaintiff bears the burden of proving discrimination *vel non* by offering evidence of pretext. One way to do this is to show that she was clearly better qualified for the position than Smith was, and that her qualifications "leap from the record" when compared to his. *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). For the reasons discussed above, this, unfortunately, is not the case. Both candidates were qualified for the position in question and it was up to the defendant to select the candidate it felt would better serve its needs. Jurisprudence makes it clear that an employer's choice between two qualified candidates is not to be second-guessed by the courts. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981).

Despite these observations, plaintiff also makes an issue out of the fact that defendant's policies required all teachers to be certified. She argues that Smith's temporary teaching certificate rendered him unqualified for the position. She cites to the Concordia Parish school policy in her opposition, noting that the Parish considered certification to be of "utmost importance" (Doc. 37). Plaintiff's

7

reasoning is unpersuasive in light of Fifth Circuit case law touching on this subject. An employer's stated prerequisite for qualification may, nevertheless, be ignored by the employer, if the candidate's other attributes are "equivalent" qualifications for the job. *Price*, 283 F.3d at 722. Here, Smith at least had a temporary certificate. For these reasons, it was entirely permissible for defendant to conclude that Smith was qualified for the position and was a preferable candidate.

All of the foregoing accepted, it would appear that the inquiry might end. It does not, for the existence of pretext evidence need not address the qualifications of Smith to create a genuine issue of material fact. Easterling provided evidence that the defendant misrepresented to the EEOC its efforts to hire women for the head coaching position before this lawsuit was filed. If true, this allegation raises serious questions about defendant's true motives in choosing Smith over Easterling. Specifically, defendant, through counsel, told the EEOC in an August 2002 letter that it had <u>first</u> offered the head coaching position to a woman, Brenda Logan, a teacher at Vidalia High (Doc. 23, Exh. 11). The board represented that Mr. Smith was offered the position <u>only</u> <u>after</u> Ms. Logan turned it down, and that the agency should infer from this offer that it and its decision-makers did not intend to discriminate against female applicants. Yet, when asked at her deposition whether she had ever been offered the position, Ms. Logan stated that she had not. (Logan Depo. p. 2, Doc. 23, Exh. 10). Plaintiff

correctly points out that this raises the spectre of a coverup to conceal the true motives behind Smith's selection. This uncertainty cannot be resolved at the summary judgment stage and is exactly the sort of material fact dispute that must be resolved at trial. Defendant's Motion for Summary Judgment must, therefore, be denied in part to allow evidence on the question of these latter motives.

B.  Retaliation

Plaintiff alleges that defendant engaged in a lengthy number of wrongs against her as a result of her initial complaints. There are three required elements in any retaliation case: (1) the plaintiff engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Dollis v. Rubin*, 77 F.3d 777, 781( 5th Cir. 1995).  Not every action an employer takes is an adverse employment action, although it may have some tangential effect upon an ultimate employment decision. *Fortenberry v. Texas*, 75 Fed. Appx. 924, 929 (5th Cir. 2003).

Plaintiff has no problem satisfying the first and third requirements, at least for purposes of summary judgment. Plaintiff was clearly engaged in protected activity by filing a lawsuit. *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000). Also, she has raised a triable issue of fact as to whether or not her subsequent negative experiences stemmed from her suit, regardless of whether other school employees were expected to work under similar

9

conditions. Employees in her position may have been required to perform the same tasks as she was asked to, but this is irrelevant if the duties were imposed upon her only as a result of her filing suit.

It is the second requirement, that of an adverse employment action, where plaintiff's claims fall short as a matter of law. The Court finds that, negative though plaintiff's experiences may have been, only one of them conceivably involved the type of "ultimate employment decision" that is required for a successful retaliation claim. Ultimate employment decisions involve hiring, discharging, granting leave, promoting, and compensating. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Thus, the fact that plaintiff was asked to, *inter alia,* perform additional duties, given an office with an unpleasant odor, or asked to drive between schools does not rise to the level of an "ultimate employment decision." The failure to promote plaintiff to the position of behavioral interventionist would, on the other hand, qualify as an "adverse employment action" absent other circumstances. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Here, however, the candidates chosen over her for those positions were better qualified for the position (Doc. 40). The candidates eventually hired held Master's degrees in counseling and psychology. One was also nationally certified as a psychologist. Plaintiff, on the other hand, had no such degree, and her qualifications stemmed not from education but rather experience. Again, it is not the place of the courts to second-guess hiring

decisions that employers make when choosing between qualified applicants. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981). Defendant was well within its discretion to choose degree-holding candidates for the position of behavioral interventionist. Plaintiff has offered no evidence of pretext on the part of the defendant in making its selections for the behavioral interventionist positions. Therefore, summary judgment for the defendant on this issue is appropriate.

### C.  Constructive Discharge

Plaintiff's Third Amended Complaint (Doc. 36) adds a claim of constructive discharge stemming from her resignation at the end of May 2004. Plaintiff could also theoretically argue that a constructive discharge constitutes an ultimate employment decision for purposes of her retaliation claim. Plaintiff's claim of constructive discharge, however, does not meet the standard for such claims, which has been clearly articulated by the Supreme Court. *Pennsylvania State Police v. Suders*. 542 U.S. 129; 124 S.Ct. 2342 (2004). Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. *Id.* at 2351. Although Title VII encompasses employer liability for constructive discharge, the "atmosphere of harassment or hostility" must create an abusive working environment, and working conditions so intolerable that "a reasonable person would have felt compelled to resign." *Id.* Factors to consider

include (1) demotion, (2) reduction in job responsibilities (3) reassignment to menial or degrading work, (4) reduction in salary, (5) reassignment to work under a younger supervisor (6) badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation, and (7) offers of early retirement that would make the employee worse off regardless of whether the offer is accepted. *Robinson v. Waste Management of Texas*, 122 Fed. Appx. 756, 758 (5th Cir. 2004); *Barrow v. New Orleans S.S.*, 10 F.3d 292, 297 (5th Cir. 1993). Humiliation itself, without more, falls far short of the legal standard for demonstrating constructive discharge. *Robinson*, 122 Fed. Appx. at 759. Even where sexual harassment takes place and a hostile work environment exists, these shortcomings alone do not establish the required abusive working environment. *Id.* A review of the record shows that none of the plaintiff's allegations implicate any of the other factors detailed in *Robinson*. Thus, summary judgment is appropriate on this issue as well.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. 23) will be granted in part and denied in part. The Supplemental Motion for Summary Judgment (Doc. 41) will be granted. A separate judgment will issue accordingly.

SIGNED on this 29th day of June, 2005, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge