**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**SUE ANN EASTERLING**                        **NUMBER 03-0985-A**

**VERSUS**                                          **JUDGE DRELL**

**CONCORDIA PARISH SCHOOL**
**BOARD**                                           **MAGISTRATE JUDGE KIRK**

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**WALKER & LYONS, L.L.P.**
1700 Irving Place
Shreveport, LA 71101
318/221-8644
318/221-7059 (fax)

BY: s/Laurie W. Lyons
        Laurie W. Lyons, #9328
ATTORNEYS FOR PLAINTIFF

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Proper Standard in Retaliation Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      The Acts of Retaliation Would Dissuade a Reasonable
                Worker from Making a Charge of Discrimination  . . . . . . . . . . . . . . . . . . . . . . . 7

        C.      Denial of the Behavioral Interventionist Position Constitutes Retaliation  . . . . . 10

        D.      Evidence of Retaliatory Motive  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

List of Exhibits

        Exhibit 200     Affidavit of Easterling Dated October 31, 2006

        Exhibit 201      Memorandum dated July 30, 2001

# TABLE OF AUTHORITIES

*Statutes:*

Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Cases:*

*Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        ___ F.3d ____, 2006 WL 1806605, at * 7 (10 Cir. 2006)

*Barnes v. Yellow Freight Systems, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    778 F.2d 1096, 1101 (5 Cir. 1985)

*Burlington Northern & Santa Fe Railway Co. v. White,* . . . . . . . . . . . . . . . . . . . .  2, 4, 5, 6, 9, 10
    126 S.Ct. 2405 (2006)

*Burns v. Texas City Refining, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
    890 F.2d 747, 751 (5 Cir. 1989)

*Erickson v. Baylor Institute for Rehabilitation at Gaston Episcopal Hosp.,* . . . . . . . . . . . . . . . . 7
    2006 WL 212106, *4 (N.D.Tex. 2006)

*Fiorros v. Texas Dept. of Health,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 15, 16
    274 F.3d 187, *191 -192 (5 Cir. 2001)

*Gee v. Principi,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    289 F.3d 342, 348 (5 Cir. 2002)

*Lee v. Winter,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    439 F.Supp.2d 82, 85  (D.D.C. 2006)

*McDonnell Douglas Corp. v. Green,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

*Medina v. Ramsey Steel Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    238 F.3d 674, 684 (5 Cir.2001)

*Miller v. Auto. Club of N.M., Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    420 F.3d 1098, 1119 (10 Cir. 2005)

*Portis v. First Nat'l Bank,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    34 F.3d 325, 328 (5 Cir.1994)

*Reeves v. Sanderson Plumbing Prods., Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    530 U.S. 133, 146-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)

*Riordan v. Kempiners,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    831 F.2d 690, 697 (7 Cir. 1987)

*Robinson v. Shell Oil Co.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)

*Rochon v. Gonzales,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10
    438 F.3d 1211, 1219 (D.C. Cir. 2006)

*Rogers v. Avoyelles Parish School Board,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    736 So.2d 303 (La.App. 3 Cir. 1999)

*Thomas v. Texas Department of Criminal Justice,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    220 F.3d 389, 394 & n.2 (5 Cir. 2000)

*Vadie v. Mississippi State University,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    218 F.3d 365, *375 (5 Cir. 2000)

*Washington v. Illinois Dept. of Revenue,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10
    420 F.3d 658, 662 (7 Cir. 2005)

*West v. Nabors Drilling USA, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    330 F.3d 379 at 387-88 (5 Cir. 2003)

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

**SUE ANN EASTERLING**                                  **NUMBER 03-0985-A**

**VERSUS**                                                        **JUDGE DRELL**

**CONCORDIA PARISH SCHOOL**
**BOARD**                                                         **MAGISTRATE JUDGE KIRK**

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT**, now comes plaintiff, Sue Ann Easterling, through

undersigned counsel, who submits this Memorandum in Opposition to defendant's Motion for partial

Summary Judgment.

## I.  INTRODUCTION

In May of 2003 Sue Ann Easterling filed suit against Concordia Parish School Board for sex

discrimination and retaliation.   In June of 2004, having quit her job due to the on-going retaliation,

Easterling amended her complaint to add a claim for constructive discharge.

In May of 2004, the defendant filed its original motion for summary judgment, and in August

of 2004, the defendant filed a supplemental motion for summary judgment regarding the plaintiff's

constructive discharge claim.

This Court, in June 2005, granted the defendant's Rule 56 Motion as to the plaintiff's

constructive discharge claim as well as her retaliation claim.  The plaintiff's discrimination claim

remained viable.

1

The Fifth Circuit Court of Appeals vacated the Court's Ruling as to the retaliation claim, however, in light of *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006), which was handed down while this case was on appeal.

The defendants have now moved for partial summary judgment with regard to the plaintiff's claim of retaliation.

## II.  STATEMENT OF FACTS

In June 2001, the plaintiff voiced her objection that she was denied the position of Head Coach of the girls' basketball team at Vidalia High School because of her gender.  (Doc. 37, Exhibit 1.).  In October 2001, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR") regarding her claims.  On August 21, 2002, the EEOC issued its determination that Easterling had been discriminated against in being denied the coaching position.  (Doc. 37, Ex. 26.).  On July 21, 2003, the plaintiff notified the EEOC and LCHR of her additional claims of retaliation.

Since plaintiff's initial complaints of gender discrimination, she was denied other positions for which she was clearly the most qualified, her office was relocated to an inconvenient location, and she was required to perform additional duties at another site, without additional compensation. Moreover, plaintiff was systematically excluded from school activities, received an inadequate office which was inferior to the office given to teachers similarly situated and was subject to policies and practices which interfered with her ability to perform her job.  As a result, plaintiff was forced to resign her employment at the end of the school year in May 2004.  (Doc. 37, Ex. 1.).

The facts regarding retaliation remain the same.  However, plaintiff has included evidence not previously submitted which further supports her position.  Ms. Easterling complained of sex discrimination, and was subsequently retaliated against in the following ways:

1. Plaintiff was denied the position of Behavioral Interventionist immediately after complaining of sex discrimination in not receiving the Coaching/Physical Education teacher position.

2. Plaintiff was placed at Ms. Peterman's (the superintendent's wife's), school with a poorly supplied and poorly maintained office.

3. Plaintiff was placed on outside morning duty without additional pay immediately after EEOC issued in its ruling in her favor.  There are only three outside duty positions, yet plaintiff was assigned to this duty at both schools she was assigned.

4. Plaintiff's privilege to write directive memos was taken away within a month after the defendant received the EEOC determination.

5. Students were removed from the Special Olympic teams plaintiff coached right before games, which greatly hindered their ability to win.

6. Plaintiff was no longer allowed to do community outings with students on a routine basis.

7. Plaintiff was no longer allowed to have weekly practices on Friday.

8. Plaintiff's office was split between two different locations ten miles apart.

9. Plaintiff was no longer allowed access to files and records during her preparation period.

10. Plaintiff was no longer allowed to report to other locations when needed.

11. Plaintiff's Special Olympic practices and games were reduced to allow Ms. Peterman to "keep up" with plaintiff even though Ms. Peterman had a schedule, sign in sheets and plaintiff's cell phone number if she needed to contact plaintiff.

3

12. Plaintiff was not given messages causing her to drive to Alexandria when the meeting had been cancelled.

13. Plaintiff was no longer allowed the use of the bus to transport her students to games.

Plaintiff incorporates by reference all briefs and exhibits filed in connection with the defendant's prior motion for summary judgment.

### III.  LAW AND ARGUMENT

#### A.    The Proper Standard in Retaliation Claims

As was the basis for this Court's initial ruling in the instant matter, prior to *Burlington Northern*, in order to establish an act of retaliation in the Fifth Circuit, a plaintiff had to show that an "ultimate employment decision" was made in her case.  The *Burlington* Court, however, explained that the scope of Title VII's retaliation provision is broader than that of its substantive discrimination provision.  *See Id.*, at 2412.  That is, "[a] provision limited to employment-related actions would not deter the many forms that effective retaliation can take."  *Id.*  "Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's 'primary purpose,' namely, '[m]aintaining unfettered access to statutory remedial mechanisms.'" *Id.*, at 2412, *quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).  "Thus, purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington Northern*, 126 S.Ct. at 2412-13.  That is, "[t]he scope of the anti-

retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.*, at 2414.

In *Burlington Northern,* the Court upheld the jury's finding of retaliation where the plaintiff's duties were changed, because the facts supported that the "duties were 'by all accounts more arduous and dirtier'; that '[her prior] position required more qualifications, which is an indication of prestige'; and that '[her prior] position was objectively considered a better job and the male employees resented White for occupying it.'... Based on this record, a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee." *Burlington Northern,* 126 S.Ct. at 2417. *See also Lee v. Winter*, 439 F.Supp.2d 82, 85 (D.D.C. 2006)(requiring an employee to perform more arduous duties rather than easier or more agreeable duties was an action which would dissuade a reasonable worker from making or supporting a charge of discrimination), *citing Burlington*, 126 S.Ct. at 2414-15.

In order to satisfy her *prima facie* case of retaliation, therefore, "a plaintiff must demonstrate (1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, ___ F.3d ____, 2006 WL 1806605, at * 7 (10 Cir. 2006), *citing Burlington Northern*, 126 S.Ct. at 2414-15; *Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1119 (10 Cir. 2005). "[T]hat a reasonable employee would have found the challenged action materially adverse

5

... in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 126 S.Ct. at 2415, *quoting Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) and *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 662 (7 Cir. 2005).

When establishing causation in a Title VII retaliation case by circumstantial evidence, the tripartite burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. *Fiorros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5 Cir. 2001). *See Portis v. First Nat'l Bank,* 34 F.3d 325, 328 (5 Cir.1994) ( "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in *McDonnell Douglas* [, which] establishes a *prima facie* case by inference."). At the *prima facie* stage, the plaintiff's standard for satisfying the causation element is "much less stringent" than a "but for" causation standard. *Fiorros v. Texas Dept. of Health*, supra, 274 F.3d 187; 191.

"A *McDonnell Douglas prima facie* showing establishes an inference of retaliatory motive that the employer can rebut by producing evidence of a legitimate, non-retaliatory reason for the adverse action . . . .   If the employer produces such evidence, then the plaintiff has the burden of proving that the Title VII protected activity 'was a ''but for '' cause of the adverse employment decision.' . . . 'If the plaintiff presents evidence supporting the *prima facie* case, plus evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer' the existence of this "but for" causation." *Id.* at 191-92.  Thus, "but for" causation is not

6

required at the *prima facie* stage. *Erickson v. Baylor Institute for Rehabilitation at Gaston Episcopal Hosp.*, 2006 WL 212106, *4 (N.D.Tex. 2006). *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5 Cir.2001) ("A 'causal link' is established when the evidence demonstrates that the employer's decision to terminate was in part on knowledge of the employee's protected activity.").

**B.   The Acts of Retaliation Would Dissuade a Reasonable Worker from Making a Charge of Discrimination**

In the twelve years of employment with the defendant school system, Ms. Easterling had no problems of the type she was faced, until after she complained of discrimination.  Immediately after the EEOC determination, the plaintiff was moved to a new office located ten (10) miles from the Special Education Department.  In addition to the fact that her new office was poorly maintained and poorly supplied, the defendant's own employees admit that it was inefficient for the plaintiff's work sites to be ten miles apart.  (Doc. 37, Ex. 2 and Ex. 3.).

Within two weeks of receiving the EEOC ruling in plaintiff's favor, Easterling was transferred to the school of Principal Ms. Peterman (the wife of Superintendent Peterman.).  For the first time in her career, her chain of command was altered such that she was more heavily scrutinized, and was required to check in each morning.  The other APE teacher, however,  was not required to check in at the school to which he was assigned.  Additionally, Ms. Peterman claimed Easterling was required to check in differently than before she filed discrimination charges, because everyone under her was required to do so.  (Doc. 23, Ex. 12,  p. 17).  If this were true, Ms. Georgia Ward, who was also an itenerent teacher like plaintiff, would have been subjected to the same requirements as Easterling, yet she was not.

7

Plaintiff was given outside duty, a first in her twelve year career, which subjected her to inclement weather.  Mrs. Peterman admitted that this was the first year she had required an itinerant employee to work outside.  (Doc. 23, Ex. 12, p. 32-33).  Although Mrs. Peterman claimed that everyone was required to have outside duty, this was not true.  Ms. Georgia Ward, like Easterling, was an itinerant teacher assigned to Ms. Peterman's school.  Ms. Peterman did not require Ms. Ward to work outside duty and had no explanation for the difference in treatment.  (Doc. 23, Ex. 12, pp. 49-50, 55.).  The only difference between Ms. Ward and Easterling is that Easterling filed charges of sex discrimination.

With regard to plaintiff's performance, she was no longer allowed access to files and records during her preparation period.  She was instructed no to write directive memos, whereas Mr. Sanders, the male A.P.E. teacher, was not so instructed.  Additionally, plaintiff had been writing directive memos her entire tenure, and never received any complaints until after she complained of sex discrimination.  Plaintiff was no longer allowed to have weekly practices on Friday, and certain students were taken off the team right before games, greatly hindering their ability to win.  Plaintiff was no longer allowed to do community outings with students, nor was she allowed to report to other locations when needed.  (Doc. 37, Ex. 1.).

The plaintiff's office was also moved to an inferior space.  After being physically housed for twelve years with a nice, well supplied office, she was moved to a storage room so run-down that the plaintiff soon suffered a respiratory infection.  (Doc. 37, Ex. 1.).  She was then offered another room that Ms. Peterman admitted smelled like a rat.  (Doc. 23, Ex. 19, p. 24, ll 5-10.).

8

Ms. Easterling was also isolated from her co-workers.  She was no longer allowed to have her office located with the others in Special Population.  This resulted in the plaintiff having her office split between two locations that were ten miles apart which made it much more difficult to serve her children.  The lack of proximity also created problems in her getting her mail and faxes on a timely basis.  (Doc. 37, Ex. 1.).

There were additional retaliatory acts Ms. Easterling had to suffer such as in December 2002, when everyone except Ms. Easterling in the Special Population Department, including the maintenance and custodial workers, were invited to attend a Christmas party at the School Board Central Office.  The plaintiff explained that these retaliatory actions affected her to such an extent that she got to the point where she was crying on the way to work and was having difficulty teaching her class.  (Doc. 37, Ex. 1, p. 11.).

Defendant attempts to distinguish *Burlington* from the facts in this case.  Defendant argues that the retaliation in *Burlington* was more severe than Ms. Easterling's because in *Burlington*, the plaintiff was suspended for thirty-seven (37) days without pay and experienced a job reassignment.  In *Burlington*, the plaintiff had been reinstated to her job with full back pay, therefore, the "suspension without pay" is misleading.

As to the job reassignment, although the Court cautioned that job reassignments are not per se retaliatory, it is an indication of retaliation.

> Common sense suggests that one good way to discourage an
> employee such as White from bringing discrimination charges would

be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found "[r]etaliatory work assignments" to be a classic and "widely recognized" example of "forbidden retaliation." 2 EEOC 1991 Manual §§ 614.7, pp. 614-31 to 614-32; see also 1972 Reference Manual §§ 495.2 (noting Commission decision involving an employer's ordering an employee "to do an unpleasant work assignment in retaliation" for filing racial discrimination complaint); EEOC Dec. No. 74-77, 1974 WL 3847, *4 (Jan. 18, 1974) ("Employers have been enjoined" under Title VII "from imposing *2417 unpleasant work assignments upon an employee for filing charges").

> *Burlington Northern and Santa Fe Ry. Co.*
> *v. White*, *supra*,  126 S.Ct. at 2416 -241.

Clearly, the timing of these actions alone demonstrate retaliation.  More specifically, these actions are clearly materially adverse, "which in this context means [they] might well have 'dissuaded a reasonable worker [the plaintiff] from making or supporting a charge of discrimination.'"  *Burlington*, 126 S.Ct. at 1215, *quoting Rochon*, 438 F.3d at 1219 (*quoting Washington*, 420 F.3d at 662).

### C.     Denial of the Behavioral Interventionist Position Constitutes Retaliation

The plaintiff applied for one of the two Behavioral Interventionist positions that were open for the 2001-2002 school year. This position paid substantially more than what plaintiff was receiving at that time. The positions were given to Odell Vining and Valencia Hall.  (Doc. 37, Ex. 1.).  Ms. Tarver was to recommend two applicants for each position according to school policy, however, she recommended only two people. (Doc. 37, Ex. 20, and  Ex. 21, p. 13, ll. 17-22; p. 14, ll. 9-15; p. 18, l. 22 to p. 19, l. 4.).   Not only was the school policy violated, Ms. Easterling was not

even considered for the position.  The school's ad in the July 11, 2001 *Concordia Sentinel* clearly stated the applicants "should be Louisiana certified," yet neither of the hirees were certified at the time of hire, whereas the plaintiff was certified. (Doc. 37, Ex. 27.).  Thus, defendant violated its own policies.  As written by  Dr. Peterman:  "I have a responsibility to place the most qualified ***and certified*** people in the available positions in the system.  ***Maintaining certified positions*** is an important part of that responsibility." (Emphasis Added.).  (Doc. 37, Ex. 14.).

Additionally, two employees were hired from out of the parish, contrary to Board policy to give preference to existing parish employees.  (Doc. 37, Ex. 20.).  Additionally,  neither of them had the years of experience with special education that the plaintiff had.

Because the School Board's selection process and selection criteria was not consistent with the normal practices of the defendant, it can be considered by the trier of fact as relevant to prove pretext. *See, e.g., West v. Nabors Drilling USA, Inc.,*  330 F.3d 379 at 387-88 (5 Cir. 2003) (plaintiff established pretext with evidence that, *inter alia,* termination for one mistake of this type was inconsistent with company policy).  An employer's failure to follow its own policy can also be evidence that the reason for the termination is pretextual.  *Barnes v. Yellow Freight Systems, Inc.,* 778 F.2d 1096, 1101 (5 Cir. 1985); *Burns v. Texas City Refining, Inc.,*  890 F.2d 747, 751 (5 Cir. 1989); *Riordan v. Kempiners,* 831 F.2d 690, 697 (7 Cir. 1987).

The defendant asserts that the two persons hired as Behavioral Interventionists were better qualified in that they had higher advanced degrees.  As the EEOC noted in its finding, "[a]ccording

11

to Bulletin 746-Louisiana Standards for State Certification of School Personnel, 'No person who lacks this certificate shall be legally eligible for teaching, administrative, supervisory, or *other professional services* in the public schools of this state.'" (Emphasis Added.).  (Doc. 37, Ex. 26.). "State policies regarding the employment [sic] school personnel are designed to first reach those who are certified." (Doc. 37, Ex. 26.).  In fact, the defendant "was required to present an affidavit stating that the position could not be filled by a certified teacher." (Doc. 37, Ex. 26.).  Neither person hired for the position was certified, whereas the plaintiff was.

Therefore, the defendant's assertion to this Court that the certification was not a factor is untrue.  Even if it was not a state requirement, it was a requirement of the parish school board.   The defendant's policy required, pursuant to Bulletin 746, that all personnel be certified by Louisiana's Department of Education in the applicable field.  In fact, Fred Butcher, the parish Academic Director and Acting Interim Superintendent of Education admitted that professional services, including Behavioral Interventionists were required to be certified in Louisiana. (Doc. 23, Ex. 9, pp. 79-80.). According to the defendant's advertisement for the position, those fields could be either social work, psychology or education.  Indeed, Odell Vining, who was hired instead of the plaintiff did not receive his Louisiana certification until two years after he was hired.  (Doc. 23, Ex. 14, p. 19.).

The defendant also misrepresents the reasoning behind the hiring of two Behavioral Interventionists. Mary Tarver, the Director of Special Education and the plaintiff's supervisor, explained in her deposition that they needed the second Interventionist because they had been unable

to hire a school psychologist.  (Doc. 23, Ex. 14, p. 69.).  She also testified that only one Behavioral Interventionist was in the budget.  *Id*. at p. 62.  She also indicated that if a certified psychologist had applied, she was have hired only one Behavioral Interventionist and only one psychologist.  *Id*. at p. 70, ll. 7-13.  Ms. Tarver's testimony is  false.  Sherry Smith was hired as a School Psychologist at the same time Vining and Hall were hired.  (See Doc. 37, Ex. 33 ("School Board discusses personnel" (sixth paragraph, fourth line)).  The fact is the defendant hired two people, neither of whom were certified.   Therefore, the plaintiff has presented her *prima facie* case and has demonstrated that the decision-makers have repeatedly lied about several key facts.  Thus, not only has the defendant failed to show a legitimate, non-discriminatory for their decision, the plaintiff has presented evidence of pretext.

Defendant contends that Mr. Odell Vining was more qualified than Easterling for the second Behavioral Interventionist position because he had a Masters Degree in a qualifying discipline as opposed to Easterling's Bachelor's Degree.  First, Easterling had received one year's credit toward her Masters Degree in Counseling.  (Doc. 37, Ex. 6.).  Secondly, as set forth in plaintiffs statement of disputed facts, defendant routinely hires professionals based on experience rather than degrees.  Thus, there is a question of fact as to the credibility of defendant's asserted reasons.

Another example of how defendant uses or ignores experience and degrees for its own ends is the situation of Ms. Sandra Cubie.  Ms. Cubie  applied for the Business Teacher position held by Mr. Smith, for which she was certified, but was denied the job.  (Doc. 37, Ex. 4. ).  Mr. Smith was

13

not certified in business, and only held a temporary general teaching certificate, yet defendant, on

several occasions, informed Ms. Cubie the position was not available.  Under the mandates of the

State Board of Education, a School District <u>must</u> hire a certified teacher over a non-certified teacher.

Defendant did not do so.

The Court in *Rogers v. Avoyelles Parish School Board*, 736 So.2d 303 (La.App. 3 Cir. 1999),

involved the issue of whether "a non-certified individual could be hired to teach... where certified

teachers are available."  *Id.* at 307.  After reviewing the law, it concluded that the plaintiff stated a

claim.

> To do otherwise would be to make acquisition of an education degree
> and submitting oneself to testing for certification vain and useless
> acts.  The statutory scheme allows for the employment of uncertified
> teachers only with the permission of the state superintendent of
> education based on a sworn affidavit of the parish school board
> superintendent and president that no certified applicants are available.
> Accordingly, we opine the fact that the school board is given
> discretion in the area of hiring teachers does not eclipse the numerous
> other provisions of law which provide for specific training and
> educational experience in order to be qualified for a teaching position.
> The discretion given to a school board is not an unfettered
> discretion–free of all other statutory requirements.

*Id.,* at 307.

Furthermore, this teaching position was not advertised,  Bulletin 746 mandates advertising

when non-certified persons hold such a position.  (Doc. 37, Ex. 19).

**D.      Evidence of Retaliatory Motive and Pretext**

Evidence of retaliatory motive can be used to prove pretext.  Thus, even if defendant

articulates legitimate reasons for its action, summary judgment should be denied, where there is evidence of illegal motive.   Additionally, the falsity of the defendant's explanations for its actions supports an inference of retaliation.  *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Gee v. Principi*, 289 F.3d 342, 348 (5 Cir. 2002). "In such cases, a plaintiff may withstand a motion for summary judgment without adducing additional, independent evidence of retaliation."  *Gee*, 289 F.3d at 348.

The Court is to consider all retaliatory acts in determining the motivation behind any one retaliatory act.  *Thomas v. Texas Department of Criminal Justice*, 220 F.3d 389, 394 & n.2 (5 Cir. 2000) (a jury could consider disciplinary actions as circumstantial evidence of the employer's retaliatory motive in failing to promote or transfer the plaintiff where plaintiff had not been disciplined in the 18 years prior to her complaints); *Fiorros v. Texas Dept. of Health*, 274 F.3d 187, *191 -192 (5 Cir. 2001).

In *Fiorros*, the Court found the circumstantial evidence, standing along, sufficient to establish a "casual link" where:

> the person who was the subject of Fierros's discrimination complaint (Arnold) was the same person who denied her the pay increase. Second, the evidence that Fierros produced regarding the two disciplinary "counseling sessions" that she received after filing her EEOC charge further indicates the existence of a retaliatory motive.
>
> *Fiorros* at pp. 195-196.

In plaintiff's statement of disputed facts, defendant's articulated reasons are shown to be contrary to the facts.  Even if the Court believes defendant has articulated legitimate reasons for the

15

myriad of actions taken against Easterling, additional facts create a question of fact as to the defendant's true motive and as to its truthfulness.  A sampling of this evidence of pretext is as follows (see also, plaintiff's statement of disputed facts):

1.     Shortly after Easterling complained at the School Board meeting that the denial of the Coaching and Physical Education teacher positions  was based on her sex, Dr. Peterman wrote her a letter concerning her filed grievance.   In the letter he summarized his feelings as follows:

> I hope my response satisfies your request for respect.  However, you should know that in my opinion, condemning me, Mr. Brown, and the system, to the Concordia Parish School Board rather than trying to meet me half way does not inspire me to give priority consideration to your requests.  Respect is a reciprocal phenomenon; one usually gets as much as one gives. (Doc. 37, Ex. 14.).

2.     Similarly, during Easterling's interview with Mary Tarver for the Behavioral Interventionist position, Ms. Tarver told Easterling she (Easterling) had to drop her grievance regarding the coaching position denial in order to be considered for the Interventionist position. (Ex.200, Affidavit of Easterling.). Ms. Tarver's husband-to-be, Mr. Huhn, was Tarver's supervisor, and was present during the interview.  He warned Easterling regarding her grievance about the coaching position that she would never win and would have a long and miserable life.  (Ex. 200.).  Mr. Huhn also wrote a letter to Easterling on July 30, 2001, to "pursue your grievance through Mr. Butcher or directly to the superintendent if you continue to feel such action is in your

best interest." (Ex. 201, Memorandum dated July 30, 2001.).  A jury could infer from this statement that Mr. Huhn was warning Easterling that she should go no further with complaints of sex discrimination.

3.      Mary Tarver also lied when she testified that she did not hire a school psychologist at the same time she hired Vining and Hall as Behavioral Interventionists and that there were no applicants for psychologist position.  (Doc. 23, Ex. 14, p. 69, l. 11).

4.      Although defendant claims being certified in Louisiana was not required, the newspaper advertisement for the Behavioral Interventionist  clearly states that it is. (Doc. 37, Ex. 27.).

5.      Mr. Peterman, for the first time on September 10, 2001, countered Easterling's argument of sex discrimination by stating the coaching position was originally offered to Brenda Logan who declined the offer.  Not only did it take Mr. Peterman three months to invent this allegation, Ms. Logan unequivocally denies that she was offered the position.  Although this deliberate untruth was stated in the context of the coaching position, it is still evidence that defendant lies to cover up its actions.

In sum, the evidence demonstrates that "but for" Easterling's protected activity and the obvious negative reaction to it, defendant would not have taken the actions against her.  See, *Vadie v. Mississippi State University*, 218 F.3d 365, *375 (5 Cir. 2000) ("Examining all of this evidence *in a light most favorable to Dr. Vadie,* a reasonable jury could conclude that, more likely than not, 'but for' his protected activity and the negative reaction to it by Dr. Hill and the chemical

17

engineering faculty, the University would have found that Dr. Vadie's strengths greatly outweighed

the technical lack of a chemical engineering degree and would have awarded him the 1995 position

in the Chemical Engineering Department.  Accordingly, we conclude that the district court did not

err in denying judgment as a matter of law on the retaliation claim.").

**IV.  CONCLUSION**

Considering all of the evidence together, in the light most favorable to the plaintiff,

defendant's motion should be denied.

Respectfully submitted,

**WALKER & LYONS, L.L.P.**
1700 Irving Place
Shreveport, LA 71101
318/221-8644
318/221-7059 (fax)

BY: s/Laurie W. Lyons
      Laurie W. Lyons, #9328
Attorneys for Plaintiff

18

**CERTIFICATE**

**I HEREBY CERTIFY** that a copy of the above and foregoing opposition to defendant's motion for partial summary judgment has been this day served upon all counsel of record in this proceeding as shown below by the method indicated *[x] filed electronically with the Clerk of Court using the CM/ECF system; notice will be sent by operation of the court's electronic filing system;* [ ] hand delivering same; [ ] fax; [ ] certified mail; [ ] U. S. Mail, postage prepaid; [ ] Federal Express:

Gus A. Fritchie, III. T. A. (La. Bar No. 5751)
Stephen G. A. Myers (La. Bar No. 29999)
Irwin Fritchie UrQuhart & Moore, LLC
400 Poydras Street Suite 2700
New Orleans, LA 70130
Telephone: 504.310.2100
Facsimile: 504.310.2101
Counsel for Defendant, Concordia Parish School Board

Shreveport, Louisiana this 31st day of October 2006.

 s/Laurie W. Lyons
Laurie W. Lyons - Of Counsel

19